IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EGAN MARINE CORPORATION and SERVICE WELDING AND SHIPBUILDING, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 05 C 5295 |
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, | ) ) ) ) | |
| Defendant. | ) | |

**REVISED**
**MEMORANDUM OPINION AND ORDER**[1]

MATTHEW F. KENNELLY, District Judge:

Plaintiffs Egan Marine Corporation and Service Welding and Shipbuilding, LLC have sued Great American Insurance Company of New York, alleging breach of the ocean marine pollution liability insurance policy that the insurer issued to plaintiffs and breach of the insurer's duty of good faith and fair dealing. Great American has asserted a counterclaim, seeking declaratory relief that it is not liable for certain of Egan Marine's defense costs in a separate lawsuit. Great American has moved for judgment on the pleadings or for summary judgment on all of its claims. Egan Marine and Service Welding have moved for summary judgment on both of its claims. For the reasons set forth below, the Court grants plaintiffs' motion in part and denies it in part. The Court

---

[1]The Court has modified its decision of July 17, 2009 after consideration of defendant's motion to reconsider.

1

also grants Great American's motion in part and denies it in part.

## Facts

Because the parties have filed cross-motions for summary judgment, the Court "construe[s] the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir. 2009) (citing *Calvin v. Home Loan Ctr. Inc.*, 531 F.3d 526, 528 (7th Cir. 2008)).

Great American issued a liability insurance policy to Service Welding, naming Egan Marine as an additional insured. The policy contains a schedule of vessels identifying the Lisa E, a tugboat, and EMC 423, a barge, both owned by Egan Marine. Service Welding paid $2,594 for $5,000,000 of insurance coverage relating to the Lisa E and $6,552 for $5,000,000 of insurance coverage relating to the EMC 423. Section B states that

> [c]overage applies to all Vessels listed on the Declarations Page or on the Schedule of Vessels listed on the Declarations Page or on the Schedule of Vessels page, for incidents that occur during the effective period of this policy . . . Subject to all EXCLUSIONS and LIMITATIONS in Sections C and D, and subject to all the terms and conditions in the Policy, We will indemnify You for the following ten coverages
>
> > 1. OPA90 (Federal) — Removal costs and expenses paid by You under Section 1002 of OPA90 (33 U.S.C. Section 2702), for which liability would have been imposed under the laws of he United States if You had not voluntarily undertaken the removal of oil.
> >
> > . . .
> >
> > 3. OPA90 — Your costs and expenses You have paid either in avoiding or mitigating the liability in 1. OPA90 (Federal) . . . as described above.

2

> . . .
>
> 5. Miscellaneous Spill Liability — Costs and expenses paid by You to mitigate liabilities for incidents where such occurrences are insured by this policy, but subject to our WRITTEN EXPRESSED PRE-APPROVAL.
>
> 6. Defense Costs — Costs and expenses paid by You to investigate and pursue a legal defense against claims or liabilities insured by this Policy. This coverage will terminate upon payment of judgements [sic] or settlements which exhaust the amount of insurance as stated in the Declarations Page of this policy.

Def. Ex. 1 at 1. The policy also states that

> [t]he Amount of Insurance stated in the Declarations Page is the most we will pay under this Policy for the total coverages B.1. through B.7. above for any one Vessel in any one incident . . . If more than one Vessel is shown on the Declarations Page or the Schedule of Vessels of this Policy, then the Amount of Insurance shown on the Declarations Page applies separately to each Vessel for each incident.

*Id.* at 2. The policy defines "incident" as "an event that exposes [the named insured] to liability under OPA90 [and other statutes] for which Section B provides coverage." *Id.* OPA90 is the Oil Pollution Act of 1990, 33 U.S.C. 2702-2720.

On January 19, 2005, the Lisa E was towing the EMC 423 along the Chicago Sanitary and Ship Canal. The EMC 423 was a "dumb barge," meaning that it had no crew, self-propulsion, or navigation systems of its own. It was entirely dependent on the tugboat. The EMC 423 received a load of petroleum at the ExxonMobil refinery in Joliet. The Lisa E was not carrying any petroleum cargo. While the Lisa E and the barge were passing near the Cicero Avenue Bridge, the petroleum on the barge exploded and started a fire. As a result of the explosion, some of the petroleum cargo carried by the barge discharged into the canal. A crew member of the Lisa E was also killed as a result of the explosion.

3

Egan Marine reported the accident to Great American, which dispatched Meredith Management to assume control of the clean-up. Egan Marine and Service Welding assisted in salvage and clean-up operations at the direction of the Coast Guard. Subsequently, the Coast Guard designated EMC 423 as the source of the discharged oil resulting in the spill, pursuant to OPA90.

On June 9, 2008, the United States sued Egan Marine as the owner/operator of both the Lisa E and the EMC 423. In that action, the United States alleges, among other things, that the EMC 423 was under the control of the Lisa E and that the two constituted a single vessel under OPA90.

## Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The parties agree that general federal maritime law governs the case. In the absence of federal maritime law, New York law governs, as provided by the insurance policy.

**A.     Declaratory judgment**

Great American has moved for summary judgment on its counterclaims for declaratory relief.  Specifically, it requests that this Court declare that (1) the liability limit on the EMC 423 has been exhausted; (2) Great American does not have a duty to pay defense costs for *in rem* liability; (3) Great American does not have a duty to provide indemnity for claims of liability under the Rivers and Harbors Act; (4) Great American does not have a duty to provide indemnity for claims arising out of general maritime law; (5) the EMC 423 and the Lisa E do not constitute a single vessel under OPA90; (6) the suit instituted by the United States does not expose Egan to liability under OPA90 as owner/operator of the Lisa E; (7) the policy does not respond to the allegations made by the United States; and (8) Great American is entitled to recoup the costs it has expended in defense of Egan Marine in the United States' lawsuit for non-covered liabilities.

Plaintiffs argue that Great American seeks an improper advisory opinion.  They contend that its claims are not ripe for adjudication because plaintiffs' potential liability has yet to be determined due to the pendency of the United States' lawsuit.  The extent of the insurance coverage, however, does not depend on the ultimate verdict of the pending lawsuit.  Rather, the Court may decide the legal issues presented by the interpretation of the insurance contract.  *Hugo Boss Fashions Inc. v. Federal Ins. Co.*, 252 F.3d 608, 623 (2nd Cir. 2001).

The policy provides coverage for Egan Marine on a per vessel, per incident basis for exposure to liability under OPA90.  The policy limits the amount paid for liability and defense costs to $5 million per vessel, per incident.  Specifically, $5 million per vessel,

per incident, "is the most [Great American] will pay under this Policy for the total of" the covered liabilities including clean-up and defense costs. Def. Ex. 1 at 2. Because plaintiffs do not dispute that the policy limit on the EMC 423 has been exhausted, Great American is not required to pay defense costs with respect to the EMC 423. It is also undisputed that the policy does not cover either vessel for *in rem* liability or Egan Marine for liability under general maritime law. As a result, Great American is entitled to declaratory relief on these grounds as well.

Great American also asks the Court to declare that it is a "legal impossibility" for Egan Marine to be held liable under the OPA90 for the tug Lisa E in the United States' lawsuit. It contends that the Egan Marine cannot possibly be exposed to liability under the OPA90 as an owner of the Lisa E because the Lisa E did not spill oil during the accident. Furthermore, Great American contends that the Lisa E and the EMC 423 cannot comprise a single vessel for liability purposes under OPA90.

In its suit against Egan Marine and others, the United States alleges that Egan Marine is liable under OPA90 as an owner/operator of the Lisa E. That simple fact demonstrates that Egan Marine is exposed to liability under OPA90 as the owner of the Lisa E. Great American argues that the statue, legislative history, and regulatory implementation all demonstrate that such a claim is not cognizable under OPA90. Even if Great American is right—and this Court expresses no opinion and makes no conclusions on that point—the fact remains that Egan Marine still must defend the suit. Under the policy, Great American has agreed to cover the costs of that legal defense.

6

**B. Breach of contract**

Plaintiffs contend that Great American breached the policy by refusing to cover Egan Marine's clean up and defense costs with respect to the Lisa E. As discussed above, the policy provides coverage to Egan Marine for exposure to liability under OPA90 as the owner of the Lisa E.

Egan Marine contends that it is entitled to reimbursement for clean up costs beyond the $5 million limit applicable to the EMC 423, which has been exhausted, because the Lisa E's separate $5 million limit also applies toward the clean up costs. Because Great American has refused to cover those cleanup costs, Egan Marine argues, Great American has breached the insurance contract. Great American argues that it did not breach the insurance contract in refusing to pay for clean-up costs associated with the Lisa E because the Coast Guard determined that the EMC 423 caused the spill, not the Lisa E. Because it has already paid the $5 million maximum allotted to the EMC 423 for clean-up costs, Great American argues, it has performed fully under the policy.

Contrary to Great American's contention, coverage under the policy is not premised on a finding of liability or fault by the Coast Guard. Rather, it is triggered by exposure to liability under OPA90. Thus, the Coast Guard's determination is not dispositive with respect to Great American's responsibility to pay the $5 million in coverage allotted to the Lisa E. The Court makes no determination regarding Egan Marine's actual liability for clean-up costs as the owner/operator of the Lisa E. That issue is currently pending in the government's lawsuit. It would be inappropriate for this

Court to preempt the pending lawsuit by rendering a determination on Egan Marine's ultimate liability as the owner of the Lisa E.

It is clear, however, that Egan Marine paid clean up costs for an incident that involved the Lisa E and for which Egan Marine may have been held liable had it not undertaken the clean up. The policy covers "[r]emoval costs and expenses paid by [Egan Marine] under . . . OPA90, for which liability would have been imposed under the laws of the United States had [Egan Marine] not voluntarily undertaken the removal of oil." Def. Ex. 1 at 1. It further covers costs expending in "mitigating or avoiding liability." *Id.* As a result, the Lisa E's separate coverage limit is applicable toward the clean-up costs, and Great American breached the insurance contract by refusing to pay those costs.

Turning to the issue of Egan Marine's defense of the United States' lawsuit, it is clear that the insurance policy covers defense costs for claims under OPA90 like the claim the government has made. The policy defines defense costs as "[a]ll Legal expenses and other similar costs that are paid by You as a direct result of an incident insured by this policy." Def. Ex. 1 at 1. Both parties agree that Great American is currently paying for Egan Marine's legal representation in the United States' lawsuit via an agreement between Great American and Egan Marine's counsel. The parties disagree, however, on whether the Lisa E's separate coverage limit under the policy is triggered by the United States' lawsuit. As indicated above, because that lawsuit clearly "exposes" Egan Marine to liability under OPA90 as the owner of the Lisa E, the $5 million applicable to the Lisa E covers the defense costs for the government's suit. As a result, Great American is required to pay defense costs in accordance with the policy

8

up to the separate limit of $5 million applicable to the Lisa E.

Plaintiffs and Great American disagree on the extent of Great American's responsibilities with respect to the lawsuit once the Lisa E's coverage is triggered. Plaintiffs contend that Great American has a duty to cover defense costs for the entire lawsuit brought by the government. Great American contends that the policy does not impose a general duty to defend the whole case but rather requires only (in addition to the duty to indemnify against liability under OPA90) reimbursement of defense costs relating to OPA90 claims.

The policy provides coverage for "costs and expenses paid by you to investigate and pursue a legal defense against claims or liabilities insured by this Policy." Def. Ex. 1 at 2. The policy also limits defense costs to those paid "as a direct result of an incident insured by this policy." *Id.* at 1. The term incident is defined as "an event that exposes [the insured] to liability under OPA90 [and other statutes not at issue here]." *Id.*

Under New York law, a "duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be." *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310, 478 N.E.2d 272, 275 (1984). "The duty is not contingent on the insurer's ultimate duty to indemnify should the insured be found liable, nor is it material that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusory provisions." *Id.* In such a case, the "insurer is duty-bound to defend the entire action if any of the claims

9

therein are potentially covered by the insurance policy." *Continental Cas. v. Employers Ins. Of Wausau*, 865 N.Y.S. 2d 855, 860 (N.Y. Sup. Ct. 2008) (citing *Frontier Insulation Contrs. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175, 690 N.E.2d 866, 869 (1997)). When the policy limits coverage to certain types of claims and excludes others, however, the insurer is entitled to recoup non-covered defense costs. *Federal Ins. Co. v. Kozlowski*, 18 A.D. 3d 33, 42, 792 N.Y.S. 2d 397, 404 (N.Y.A.D. 2005). Thus, Great American must pay for plaintiffs' defense costs relating to the government's suit in its entirety, but it later may recoup costs expended in defense of non-covered claims.

**C.     Breach of implied covenant of good faith and fair dealing**

Great American contends that federal maritime law preempts plaintiffs' claim for breach of the duty of good faith and fair dealing. In this regard, Great American relies largely on *Norwalk Cove Marina, Inc. v. S/V Odysseus, Emerald Lady, Inc.*, 64 Fed. Appx. 319, 320 (2nd Cir. 2003), a non-precedential opinion in which the court ruled that a counterclaim for punitive damages and attorney's fees under a state statute was preempted by federal maritime law. That case is not helpful to this analysis, however, because it dealt with the issue of punitive damages and attorney's fees under the Connecticut Unfair Trade Practices Act and did not address the issue of the duty of good faith relating to a marine insurance contract.

Plaintiffs contend that federal admiralty law recognizes a duty of good faith and fair dealing in this circumstance. It is unclear that such a duty exists under admiralty law. *See Flores v. American Seafoods Co.*, 335 F.3d 904, 913 (9th Cir. 2003) (concluding that the duty of good faith and fair dealing imposed by the federal common

10

law of contracts applies "at least in the context of admiralty law governing a seaman's rights and remedies").  Nevertheless, New York law unequivocally imposes a duty of good faith upon parties to marine insurance contracts.  *North American Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc.*, 499 F. Supp. 2d 361, 376-77 (S.D.N.Y. 2007) (stating New York law imposes upon parties to a marine insurance contract the duty of utmost good faith and holding that insurer's refusal to pay for losses breached even the lesser duty of good faith and fair dealing).  "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance."  *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y. 2d 144, 153, 773 N.E.2d 496, 500 (2002).  The Court sees no basis under the law to conclude that federal maritime law preempts this state common law rule.

There remain, however, genuine issues of material fact that preclude summary judgment on this claim.  Plaintiffs contend that Great American failed to review the language of the policy in deciding whether to pay the claim.  This assertion is based on the deposition of Julia Price.  But when Ms. Price's testimony is viewed in the light most favorable to Great American, as required in this context, a reasonable fact finder could reject plaintiffs' contention.

While working on the summary judgment motions, the Court became aware that Great American had noticed for presentment on July 28 a motion seeking to stay the case due to the pendency of a criminal investigation regarding the petroleum spill.  Great American does not explain in the motion, however, how the possibility of criminal charges could impact coverage for the government's OPA90 claim.  The Court therefore denies Great American's motion, without prejudice.

**Conclusion**

For the foregoing reasons, the Court denies defendant's motion for declaratory judgment [docket no. 106] with regard to Egan Marine's liability under OPA90 as owner/operator of the Lisa E, but otherwise grants its motion. The Court grants plaintiffs' motion for summary judgment [docket no. 124] on their breach of contract claim, but otherwise denies the motion. The Court denies defendant's motion for reconsideration [docket no. 141] but has revised its original decision of July 17, 2009. The original decision [docket no. 139] is withdrawn. The Court also denies defendant's motion to stay [docket no. 137]. The case is set for a status hearing on September 2, 2009 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 17, 2009 (modified August 14, 2009)